**Darryl L. HRONEK, Plaintiff,**

v.

**DRUG ENFORCEMENT AGENCY, et al., Defendants.**

No. CIV. 97–1146–JO.

United States District Court, D. Oregon.

Aug. 20, 1998.

Darryl L. Hronek, Taft, CA, pro se.

Judith D. Kobbervig, Assistant United States Attorney, District of Oregon, United States Attorney's Office, Portland, OR, for Defendants.

## OPINION AND ORDER

ROBERT E. JONES, District Judge.

Plaintiff Darryl Hronek brings this action against defendants Drug Enforcement Administration ("DEA") and United States Attorney's Office ("USAO") under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552. Plaintiff alleges that these agencies wrongfully are withholding certain records and information, and asks this court to order the defendants to release the requested information. Specifically, plaintiff seeks access to records maintained by these agencies pertaining to his activities between June 1, 1992, and October 1, 1995, including certain specified files.

The case is before the court on the parties' cross-motions for summary judgment (## 25 and 42). For the reasons stated below, both motions are denied.

## BACKGROUND

### 1. *The DEA Request*

Plaintiff initiated his FOIA request to DEA by letter dated March 24, 1997. Plaintiff's request sought, among other things, information concerning his activities between June 1, 1992, and October 1, 1995, and also sought certain very specific documentary material, including named DEA and Spokane Police Department files.

By letter dated April 29, 1997, DEA released portions of 31 pages to plaintiff, withheld 15 pages in their entirety, and informed plaintiff that certain information had been referred to another agency for response. In a second letter, DEA informed plaintiff that his name was mentioned in two "related" files. Plaintiff was further informed that if he wished to have the files processed, he would have to return a signed copy of the letter and pay the search fee of $36.00. Also on April 29, 1997, DEA referred four pages to the FBI for direct response to plaintiff's request.

On May 22, 1997, Plaintiff appealed DEA's response to the Department of Justice, Office of Information and Privacy ("OIP"), and requested expedited processing. By letter dated May 30, 1997, OIP denied the request for expedited processing and informed plaintiff that he could treat the letter as a denial of his appeal.

### 2. *The USAO Request*

Plaintiff initiated his FOIA request to the USAO for the Eastern District of Washington by letter dated March 24, 1997. His request sought information pertaining to himself and his prosecution in *U.S. v. Darryl Hronek,* CR–93–271–WFN, Appeal No. 94–30220. As with his contemporaneous request to DEA, plaintiff requested expedited processing. On April 1, 1997, plaintiff's request was forwarded to the Executive Office for the United States Attorneys ("EOUSA"), United States Department of Justice.

On May 5, 1997, the EOUSA sent plaintiff a letter acknowledging his request. The letter informed plaintiff that the request would be handled in chronological order based on the date of receipt and confirmed that he was expected to pay a $25.00 fee. On May 11, 1997, plaintiff responded, stressing the need for emergency processing and demanding waiver of the fee. By letter dated June 16, 1997, the EOUSA denied plaintiff's request for expedited treatment and notified him of his appeal rights.

By letter dated July 10, 1997, plaintiff appealed the EOUSA's denial of expedited treatment to the OIP. OIP denied the appeal by letter dated July 22, 1997.

By letter dated October 8, 1997, EOUSA released 577 pages of material in full and portions of an additional 14 pages to plaintiff. The letter advised plaintiff of the claimed exemptions, informed him of his appeal rights, and informed him that certain documents originating with other agencies had been sent to those agencies for consideration of his request.[1]

Following plaintiff's initiation of this lawsuit, EOUSA undertook a second review of the documents that it had withheld. Based on the second review, the EOUSA released an additional four pages in full and 12 pages in part. According to the declaration of John Boseker, the EOUSA continues to withhold 25 pages in part and 813 pages, 7 videotapes, and 4 audiotapes in their entirety.

### 3. *This Litigation*

Plaintiff filed his FOIA complaint in this court on August 4, 1997. On August 4, 1997, plaintiff filed a motion for a *Vaughn* index,[2] directed to the DEA. On October 28, 1997, plaintiff filed a similar motion for a *Vaughn* index directed to the USAO. On November 17 and 20, 1997, DEA and USAO filed *Vaughn* indices and supporting declarations,

---

1. EOUSA referred four pages to the FBI, 135 pages to the DEA, and 51 pages to the U.S. Marshal's Service.

2. The term *"Vaughn* index*"* originated from *Vaughn v. Rosen,* 484 F.2d 820 (D.C.Cir.1973), in which the court rejected an agency's conclusory affidavit to the effect that requested FOIA documents were subject to exemption. *See, e.g., Spurlock v. F.B.I.,* 69 F.3d 1010, 1012 n. 1 (9th Cir.1995). The requirements of *"Vaughn* index*"* are discussed later in this opinion.

thereby mooting plaintiff's two earlier motions.

On November 28, 1997, DEA and USAO filed a motion for summary judgment. Rather than file a response, as such, to the defendants' motion, plaintiff chose to file a cross-motion for summary judgment. Defendants' motion (# 25) and plaintiff's cross-motion (# 42) are now before the court.

## APPLICABLE LAW

■ Congress enacted FOIA to "facilitate public access to Government documents." *United States Dep't of State v. Ray,* 502 U.S. 164, 173, 112 S.Ct. 541, 116 L.Ed.2d 526 (1991). Accordingly, FOIA " 'mandates a policy of broad disclosure of governmental documents.' " *Maricopa Audubon Soc. v. U.S. Forest Service,* 108 F.3d 1082, 1085 (9th Cir.1997)(*quoting Church of Scientology v. Department of the Army,* 611 F.2d 738, 741 (9th Cir.1979)).

■ When a request is made, a governmental agency may withhold all or portions of a document "only if the material at issue falls within one of the nine statutory exemptions found in § 522(b)." *Maricopa Audubon Soc.,* 108 F.3d at 1085. The exemptions are "explicitly exclusive," *U.S. Dept. of Justice v. Tax Analysts,* 492 U.S. 136, 151, 109 S.Ct. 2841, 106 L.Ed.2d 112 (1989), and " 'must be narrowly construed' in light of FOIA's 'dominant objective' of 'disclosure, not secrecy.' " *Maricopa Audubon Soc.,* 108 F.3d at 1085 (*quoting Department of the Air Force v. Rose,* 425 U.S. 352, 361, 96 S.Ct. 1592, 48 L.Ed.2d 11 (1976)).

■ FOIA creates a strong presumption in favor of disclosure, and requires this court to conduct a *de novo* review of the government agency's determination to withhold requested information. *Davin v. U.S. Dept. of Justice,* 60 F.3d 1043, 1049 (3rd Cir.1995); *see* 5 U.S.C. § 522(a)(4)(B). The government agency bears the burden of proving that withheld materials are exempt. *Maricopa*

*Audubon Soc.,* 108 F.3d at 1085; *Davin,* 60 F.3d at 1049.

■ The district court's review in a FOIA case is difficult, because "the party seeking disclosure does not know the contents of the information sought and is, therefore, helpless to contradict the government's description of the information or effectively assist the trial judge." *Davin,* 60 F.3d at 1049. Ordinary rules of discovery, in which each party has access to the evidence upon which the court will rely in resolving the dispute between them, do not apply. Instead, only the party opposing disclosure has access to all the facts. *Wiener v. F.B.I.,* 943 F.2d 972, 977 (9th Cir.1991). In recognition of this problem, courts have required government agencies seeking to withhold information under a claim of exemption to supply the opposing party and the court with a *"Vaughn* index." [3] *Wiener,* 943 F.2d at 977. The *Vaughn* index must:

(1) identify each document withheld; (2) state the statutory exemption claimed; and (3) explain how the disclosure would damage the interests protected by the claimed exemption.

*Spurlock v. F.B.I.,* 69 F.3d at 1012 n. 1; *see also Wiener,* 943 F.2d at 977. The purpose of the index and the agency's public affidavit is to "afford the FOIA requester a meaningful opportunity to contest, and the district court an adequate foundation to review, the soundness of the withholding." *Wiener,* 943 F.2d at 977 (citation omitted). The index "thus functions to restore the adversary process to some extent, and to permit more effective judicial review of the agency's decision." *Id.*[4]

In this case, the DEA and USAO each supplied both a *Vaughn* index and accompanying public declarations. Whether these are adequate is the issue raised by the parties' cross-motions for summary judgment.

The Ninth Circuit requires agencies to explain the reasons for withholding documents with specificity by "tailor[ing] the explana-

---

3. *See* footnote 1.

4. Thus, a *Vaughn* index is not required where it is not needed to restore the adversary process, for example, where the government gains no

advantage from access to material facts the FOIA requester lacks. *Wiener,* 943 F.2d at 978 n. 5, discussing *Lewis v. Internal Revenue Service,* 823 F.2d 375 (9th Cir.1987).

tion to the specific document withheld." *Wiener,* 943 F.2d at 979 ("[s]pecificity is the defining requirement of the *Vaughn* index"). While other courts have permitted agencies to use categorical descriptions and explanations, the Ninth Circuit has not. *See Assassination Archives and Research Center v. C.I.A.,* 903 F.Supp. 131, 132 (D.D.C.1995)(refusing to follow the Ninth Circuit rule established by *Wiener* and impose a "blanket requirement of document-by-document particularized explanations"); *see Wiener,* 943 F.2d at 978–79. In *Wiener,* the Ninth Circuit explained:

> Unless the agency discloses "as much information as possible without thwarting the [claimed] exemption's purpose * * *" the adversarial process is unnecessarily compromised. The FBI did not disclose all it could. Indeed, the index provides no information about particular documents and portions of documents that might be useful in contesting nondisclosure—the two principal affidavits of Agents Chester and Peterson make no reference to any particular document at all.

*Wiener,* 943 F.2d at 979.

■■■ Thus, to meet its burden, a government agency "must offer oral testimony or affidavits that are 'detailed enough for the district court to make a *de novo* assessment of the government's claim of exemption.'" *Maricopa Audubon Soc. v. U.S. Forest Service,* 108 F.3d 1089, 1092 (9th Cir.1997) (*Maricopa II*) (citation omitted). Where the agency relies on affidavits, as in this case, the affidavits "must contain 'reasonably detailed descriptions of the documents and allege facts sufficient to establish an exemption.'" *Maricopa II,* 108 F.3d at 1092 (citation omitted).

The DEA's and USAO's *Vaughn* indexes and declarations must be assessed with this legal framework in mind.

## STANDARD FOR SUMMARY JUDGMENT

Under Rule 56, summary judgment shall be rendered if the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). "Material facts" are facts "that might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). In considering a motion for summary judgment, the "evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson,* 477 U.S. at 255, 106 S.Ct. 2505.

■■■ As stated above, FOIA places the burden of justifying nondisclosure on the government. 5 U.S.C. §§ 552(a)(4)(B), 552(b). For summary judgment to be appropriate in favor of the government in a FOIA case, the government must prove "that each document that falls within the class requested either has been produced, is unidentifiable, or is wholly exempt from [FOIA's] inspection requirements." *National Cable Television Ass'n, Inc. v. F.C.C.,* 479 F.2d 183, 186 (D.C.Cir.1973); *see also Marks v. U.S. Dept. of Justice,* 578 F.2d 261, 262 (9th Cir.1978)(*citing National Cable*). An agency resisting disclosure may satisfy its burden by submitting an affidavit or index containing reasonably detailed descriptions of the documents and alleging facts sufficient to establish an exemption. *See Lewis v. IRS,* 823 F.2d 375, 378 (9th Cir.1987). If the agency supplies reasonably detailed materials, "then the district court need look no further in determining whether an exemption applies." *Church of Scientology v. U.S. Dept. of Army,* 611 F.2d 738, 742 (9th Cir.1979).

## DISCUSSION

### I. *The Agencies' Submissions.*

#### a. *The DEA*

The DEA submitted the declaration of Leila Wassom, a Paralegal Specialist assigned to the Freedom of Information Section of DEA headquarters in Washington, D.C. In the declaration, Ms. Wassom explains the DEA's filing system, describes the search for responsive documents, and explains the process involved in responding to plaintiff's request. Wassom specifies the exemptions on which DEA relies, and generally outlines the rea-

soning behind the claimed exemptions. With respect to confidential source information claimed to be exempt under section 552(b)(7)(D), Wassom provide a more specific page-by-page breakdown of the withheld information.

Among the exhibits to Wassom's declaration is a *Vaughn* index, which consists of a series of "Page Itemization" sheets. The "Page Itemization" sheet is a form that contains the following information about each document: (1) page number; (2) document type; (3) date of document; (4) boxes to check indicating whether the document was released or withheld; (5) a description of who the document was "To" and "From" and the purpose; (6) a table with the following headings: "Item," "Material Deleted," "Exemption," and "Contents."

The DEA also submitted a supplemental declaration of Wassom and a supplemental *Vaughn* index. The supplemental declaration responds to certain of plaintiff's arguments concerning the sufficiency of DEA's document search and response, and also addresses the 135 pages of information referred to the DEA by the EUSAO. Wassom's supplemental declaration also explains DEA's justification for withholding certain of the documents and contains a page-by-page description. Attached to the supplemental declaration is a supplemental *Vaughn* index concerning the additional 135 pages, in the form described above.

b. *The EUSAO*

The EUSAO submitted the declaration of John Boseker, Attorney Advisor to the EUSAO, and a *Vaughn* index. Boseker's declaration describes his job responsibilities, the chronology of plaintiff's FOIA request and the EUSAO's response, the EUSAO's search for records responsive to plaintiff's request, and generally describes the EUSAO's claimed exemptions and the reasons for withholding certain documents under both the Privacy Act, 5 U.S.C. § 552a, and FOIA.

The *Vaughn* index attached to Boseker's declaration contains four columns of information: Document/Pages; Description of Document; Content of Withheld Portions; and Exemption. Entries in the index indicate whether documents were withheld in full or in part, and whether exempt and non-exempt information was segregable. In addition, certain entries show that on "re-review," additional information was released to plaintiff.

## II. *Sufficiency of Submissions.*

Plaintiff challenges the sufficiency of the above described submissions on multiple grounds. Among other things, plaintiff asserts the following:

a. Neither Wassom's nor Boseker's declarations meet the "personal knowledge" requirement of Rule 56.

b. DEA's records search was inadequate.

c. DEA improperly refused to search the two "related" files without advance payment of fees.

d. DEA's and EUSAO's responses fail to meet the segregability requirements of FOIA.

e. DEA's and EUSAO's responses are not sufficiently specific and thus fail to properly support the claimed exemptions.

f. Prior disclosure by DEA of some of the information waived all claims of exemption under FOIA and the Privacy Act as to that information.

The court will address these contentions in turn.

a. *Personal Knowledge Requirement*

■ Plaintiff argues that neither Wassom's nor Boseker's declarations meet the personal knowledge requirements of Rule 56. Plaintiff's main objection appears to focus on each declarant's statement that his or her declaration is based either on personal knowledge "*or* on the basis of information acquired by me through the performance of my official duties.*" Boseker Declaration, ¶ 2; Wassom Declaration, ¶ 13 (emphasis added).

Fairly read, the declarations establish Boseker's and Wassom's personal involvement in processing plaintiff's requests. That is all that is required. In FOIA cases, Rule 56 requires an affidavit or declaration from an agency employee responsible for supervising the search: "there is no need for the agency

to supply affidavits from each individual who participated in the actual search." *Carney v. U.S. Dep't of Justice*, 19 F.3d 807, 813 (2nd Cir.1994). The declarations submitted in this case are sufficient to meet that requirement. *See* Boseker Declaration, ¶ 2; Wassom Declaration, ¶ 13; Supplemental Wassom Declaration, ¶ 3.

### b. *Sufficiency of DEA's Search.*

■ Plaintiff argues that DEA failed to conduct an adequate search for the documents requested. Specifically, plaintiff asserts that DEA's referral of his request from the Spokane, Washington field office to Washington, D.C., headquarters violated FOIA's requirements. In addition, plaintiff argues that DEA limited its search to "official records," thereby improperly narrowing the scope of the search from his request.

■ In the Ninth Circuit, the agency must

demonstrate that it has conducted a "search reasonably calculated to uncover all relevant documents." Further, the issue to be resolved is not whether there might exist any other documents possibly responsive to the request, but rather whether the *search* for those documents was *adequate.* The adequacy of the search, in turn, is judged by a standard of reasonableness and depends, not surprisingly, upon the facts of each case.

*Zemansky v. United States E.P.A.*, 767 F.2d 569, 571 (9th Cir.1985)(emphasis in original; citation omitted). For purposes of summary judgment, declarations describing the agencies' search procedures are sufficient "if they are relatively detailed in their description of the files searched and the search procedures, and if they are nonconclusory and not impugned by evidence of bad faith." *Zemansky,* 767 F.2d at 573.

The declarations in this case portray a reasonable search of DEA records, including reasonable inquiries at the Spokane field office. Plaintiff complains that DEA failed to search for records in three files he specified by number, but Wassom plainly states in her affidavit that "DEA has searched and processed each responsive document from the

three files that the plaintiff originally requested information from." Wassom Supplemental Declaration, ¶ 5. In addition, Wassom explains that the Washington field office has no evidence, and no records of evidence seized have been filed in the three files plaintiff requested. Wassom Supplemental Declaration, ¶ 6. Finally, Wassom explains in her original declaration that

DEA's official records are maintained in a system housed at DEA Headquarters; separate systems are not maintained at field office locations. Any case files located at DEA field offices are duplicates of the headquarters case files.

Wassom Declaration, ¶ 5.

Wassom's declarations are sufficient. Although plaintiff seems to suggest that DEA's search was conducted in bad faith, there is no evidence to support this. Accordingly, the court concludes that the DEA search was sufficient. *See Zemansky,* 767 F.2d at 573; *see also Steinberg v. U.S. Dept. of Justice,* 23 F.3d 548, 552 (D.C.Cir.1994).

### c. *DEA Refusal to Search "Related" Files Without Payment of Fees.*

It appears from DEA's submissions that DEA has processed plaintiff's request for information from two related files (Nos. RH 93–0012 and RH 93–0016) and has waived any fees associated with the processing. *See* Wassom Supplemental Declaration, ¶ 4 and Exhibit A. Accordingly, the court will not address this issue.

### d. *Segregability.*

Plaintiff asserts that both DEA and EU-SAO failed to meet the segregability requirements of FOIA, that is, that both failed to justify the withholding of entire documents when only a portion was determined to be exempt from disclosure.

Section 552(b) of FOIA requires that

Any reasonably segregable portion of a record shall be provided to any person requesting such record after deletion of the portions which are exempt under this subsection.

The agency bears the burden to prove that withheld portions of documents are not seg-

regable from non-exempt portions. 5 U.S.C. § 552(a)(4)(B); *Davin v. U.S. Dept. of Justice,* 60 F.3d 1043, 1053 (3rd Cir.1995). In *Wiener, supra,* the Ninth Circuit clarified that the district court must assess segregability on a document-by-document basis:

> It is reversible error for the district court "to simply approve the withholding of an entire document without entering a finding on segregability, or the lack thereof," with respect to that document. * * * The court on remand must make a specific finding that no information contained in each document or substantial portion of a document withheld is segregable.

*Wiener,* 943 F.2d at 988 (citation omitted). Given the procedures on summary judgment in FOIA cases and the limited information available to the district court, this court, like the plaintiff, must look exclusively to the agency's submissions for the factual basis necessary to make the required segregability findings.

The DEA originally withheld 15 pages in their entirety and portions of 31 additional pages. The processing of the two "related" files, mentioned above, resulted in the DEA withholding an additional 25 pages in their entirety. Of the 135 pages referred from EUSAO, DEA withheld 75 plus 16 in their entirety and identified the remainder as duplicative. With respect to the pages withheld in their entirety on the basis of claimed exemptions, the DEA explained that "on many pages no non-exempt information was located." Wassom Declaration, ¶ 12. Entries in the two DEA *Vaughn* indices indicate that documents withheld on grounds of exemption contain "third-party information," "identity of a confidential source," "information from a confidential source," and similar information. The *Vaughn* index entries also indicate that portions of pages withheld contained names of law enforcement personnel, names of special agents, personal information, etc.

Boseker's declaration states that the EUSAO initially released 577 pages in full and withheld portions of 14 additional pages. Following re-review, the EUSAO released an additional four pages in full and portions of 12 pages. According to Boseker, EUSAO continues to withhold 25 pages in part and 813 pages, seven videotapes, and four audiotapes in their entirety. Boseker Declaration, ¶¶ 11–12. With respect to segregability, Boseker states:

> Each document, and the pages contained in each document, was evaluated for segregability. Where a document was withheld in its entirety, EOUSA determined that no meaningful portions could reasonably be released without destroying the integrity of such document as a whole. (To a certain extent, when practicable, given the volume of records involved in this case, a semi-categorical approach was taken both with respect to records identified specifically to third party individuals and local law enforcement records. All were reviewed for segregability within said categories identified to the Index.)

Boseker Declaration, ¶ 23.

The EUSAO's *Vaughn* index identifies whether each listed document was determined to be nonsegregable and withheld in full, or wholly released or released in part. The reasons for the segregability determination are explained in narrative form, primarily in terms of the exemption or exemptions claimed. For example, with respect to a two-page document listed as Document 9, "AUSA Notes (undated)," the explanation states:

> AUSA handwritten notes made during investigatory or trial preparation stage of prosecution, of an concerning third party individuals and their properties: no reference to Hronek. Withheld to protect third party individuals from unwarranted invasion of personal privacy under b(7)(C). Also, withheld as attorney work product/deliberative process (i.e., reveals mental impressions, thought processes, 'what is needed,' 'what is important') as b(5). Nonsegregable. (WIF [withheld in full] ).

Boseker Declaration, p. 17 (*Vaughn* index).

Mindful of the stringent review required of district courts by Ninth Circuit precedent, I make the following findings with respect to the segregability issue. As a preliminary matter, however, I note that for purposes of this portion of the discussion, I accept the agencies' statements concerning their

claimed exemptions at face value. As explained below, however, I lack a sufficient factual basis to rule for or against the agencies with respect to many of the claimed exemptions. *See* subsection II.e of this opinion.

 With respect to the DEA's segregability determinations, I agree with plaintiff that the DEA has failed to explain the process by which it made segregability determinations, at least with respect to certain information. I approve, however, the agency's segregability determination as to certain limited information, specifically: G–DEP (Geographical Drug Enforcement Program) codes; NADDIS (Narcotic and Dangerous Drug Information System) numbers for persons other than plaintiff; the top, bottom, and indexing sections of DEA forms 6 and 6a;[5] identifying information such as the names of special agents, names of law enforcement personnel, and the names of third parties, confidential sources, and other suspects. Wassom's declaration and the DEA's *Vaughn* indices show that one or more of these items was deleted from virtually every page (6–169), with a few exceptions (*e.g.,* pp. 54, 55, 60, 61, 133).

 I find DEA's segregability determinations insufficient with respect to other types of information because DEA has failed to provide a sufficient factual recitation to permit me to approve or disapprove those determinations. Specifically, DEA withheld the following types of information without providing an explanation as to why the interests at stake could not be protected by a more limited redaction: investigative details, information supplied by a confidential source, and personal information (these appear in pp. 9, 11, 18–20, 24–38, 41–45, 51, 56–59, 62–74, 76–99, 101–169). Blanket explanations, such as those contained in Wassom's declaration, do not meet FOIA's requirements and do not permit the court to make the necessary findings. *See Davin,* 60 F.3d at 1052–53; *Wiener,* 943 F.2d at 988.

DEA also withheld 6 pages (pp. 54–55, and 60–63) on the basis that they contained third-party information described as "details of legal proceedings," which DEA claims to be exempt under exemption (b)(7)(c) (unwarranted invasion of personal privacy). As with the investigative details, etc., discussed above, assuming the exemption is valid, DEA has failed to provide the court with any basis to approve or disapprove its segregability determination. Rejecting similar agency submissions in *Davin,* the Third Circuit explained:

> The government fails to indicate *why* the privacy interests at stake could not be protected simply by redacting particular identifying information. Without some further elaboration of the document's contents, [plaintiff] is unable to dispute the [agency's] assertion that more information is not segregable. *Cf. Church of Scientology Int'l v. United States Dep't of Justice,* 30 F.3d 224, 232 n. 1 (1st Cir.1994)(the government "needs to provide more than [an] unsupported conclusion to justify withholding the whole document. Is the document full of personal anecdotes, whose perspective would tend to reveal the declarant, thus supporting this conclusion? Or does the document * * * include material that could be segregated from the identifying information?").

*Davin,* 60 F.3d at 1052.

With respect to the EUSAO's segregability determinations, I find that for the most part, EUSAO has provided adequate justification for its decisions, again, assuming for purposes of this discussion that the claimed exemptions are valid.

Like the DEA, EUSAO specifically withheld identifying information (names) from a number of documents (*e.g.,* Document Nos. 3–8, 16, 18–21, 27, 32–33, 36, 38, 40–43, 45). In addition, I find that EUSAO has adequately justified withholding the following documents and other items in their entirety, assuming the validity of the underlying exemption(s):

---

**5.** Plaintiff argues that DEA improperly failed to separately index these sections in the *Vaughn* index. Given the DEA's explanation of the nature of the information contained in these forms, however, I do not believe that it was necessary for the DEA to include them in the *Vaughn* index. *See* footnote 4, *supra.*

1. Document 1: Grand jury materials (*but see* discussion at p. 36 below);

2. Document 2: Records sealed under 18 U.S.C. § 2510 (pertaining to interception of electronic communications);

3. Document 9: AUSA notes of investigation and trial preparation withheld as attorney work product and under the deliberative process privilege;

4. Documents 10, 11, 12, 13, and 14: These documents include title guarantees and title information pertaining solely to third parties' properties, evidently generated or obtained during investigation of plaintiff's grow operation;[6]

5. Document 15: Addendum to the local police department investigative report made in the course of a drug-related criminal investigation. EUSAO explains that the document lists properties, third party names and personal information, and represents that this information is too integrally intertwined with references to plaintiff to be segregable, an explanation the court accepts;

6. Document 17: USAO correspondence pertaining solely to a case against a co-defendant/third party individual, withheld to avoid invasion of personal privacy;

7. Document 24: Draft memorandum sent to plaintiff's defense attorney concerning PSI alternatives due to plaintiff's fugitive status. The EUSAO explains that the draft contains handwritten corrections reflecting thought processes and made in contemplation of litigation, and was withheld in its entirety as work product and privileged;

8. Document 25: Intra-agency prosecution memorandum from AUSA to USAO pertaining to plaintiff's fugitive status, including proposed action and recommended course in criminal proceedings, withheld as work product;

9. Document 28: Letter to AUSA from third party trial witness concerning evidence, withheld on privacy grounds;

10. Document 29: Letter to AUSA from third party witness concerning subpoena, withheld on privacy grounds;

11. Document 32: AUSA trial preparation materials, withheld as work product and as privileged;

12. Document 33: Witness lists for trial, including AUSA handwritten notes, withheld as work product and on privacy grounds;

13. Document 34: AUSA handwritten notes on evidence relative to third parties made for use at trial, withheld as work product and on privacy grounds;

14. Document 35: Memorandums of telephone calls from third party witnesses to USAO regarding trial availability and evidence, withheld on privacy and privilege grounds;

15. Document 36: AUSA notes made in connection with responding to plaintiff's appeal from his conviction, withheld as work product and as privileged;

16. Document 37: Criminal background reports on third parties, withheld on privacy grounds;

17. Document 41: DEA report of investigation and surveillance concerning a third party with no reference to plaintiff, withheld on privacy and confidentiality grounds;

18. Document 42: Case file concerning third party with no references to plaintiff, withheld on privacy and confidentiality grounds;

19. Document 43: Same as document 42, with different specific content;

20. Document 47: Police department "SIU Print-outs" concerning third parties, withheld on privacy and confidentiality grounds;

21. Document 52: Communication between local police department and DEA concerning the property of a third party, withheld on privacy and confidentiality grounds;

22. Document 54: Four audiotapes of conversations between plaintiff and third parties made during investigation of drug-

---

**6.** Plaintiff was convicted of manufacturing and conspiracy involving marijuana. He evidently induced other individuals to buy homes in their names or in fictitious names, and then began marijuana growing operations in those homes. *See* Wassom Declaration, ¶ 11.

related conspiracy, withheld on privacy and confidentiality grounds and on the basis of statutes permitting interception of communications.

I also find appropriate the EUSAO's decision to withhold portions of document 31, described as two intra-agency e-mail messages, including handwritten notes, concerning strategy with respect the plaintiff's Ninth Circuit appeal, as work product.

 I further find that the EUSAO's explanations concerning segregability are insufficient with respect to documents 38, 39, 40, 44, 45, 46, 48, 49, 50, 51, and 53.[7] Many of these are multiple-page documents and some contain information directly concerning plaintiff. The EUSAO's explanations are insufficient to permit the court to determine whether any portions of the withheld documents reasonably could be released with careful redaction.

e. *Adequacy of Agency Explanation of Claimed Exemptions.*

At the outset, I note that DEA referred four pages to the FBI (Wassom Declaration, ¶ 8), and EUSAO referred four pages to the FBI, 135 pages to DEA, and 51 pages to the U.S. Marshal's Service (Boseker Declaration, ¶ 10), asking that these agencies directly respond to plaintiff. Boseker's declaration also states that these other agencies "will provide a declaration to the Court regarding the status and disposition of said referrals." Boseker Declaration, ¶ 10. As discussed above, DEA has provided the anticipated declaration, but the court has yet to receive anything from the FBI or the U.S. Marshal's Service. I believe that the ultimate responsibility for a full response lies with the defendant agencies, and expects the DEA and EUSAO to ensure that the court receives the necessary information before this action is fully terminated.

This court now embarks on the daunting task of determining, in relative abstract, the validity of the agencies' claims of exemption based solely on their respective declarations and indices. As pertinent, FOIA provides:

(b) This section does not apply to matters that are—

\* \* \* \* \* \*

(2) related solely to the internal personnel rules and practices of an agency;

(3) specifically exempted from disclosure by statute (other than section 552b of this title), provided that such statute (A) requires that the matters be withheld from the public in such a manner as to leave no discretion on the issue, or (B) establishes particular criteria for withholding or refers to particular types of matters to be withheld;

\* \* \* \* \* \*

(5) inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency;

(6) personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy;

(7) records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information \* \* \* (C) could reasonably be expected to constitute an unwarranted invasion of personal privacy, (D) could reasonably be expected to disclose the identity of a confidential source, including a State, local, or foreign agency or authority or any private institution which furnished information on a confidential basis, and, in the case of a record or information compiled by criminal law enforcement authority in the course of a criminal investigation or by an agency conducting a lawful national security intelligence investigation, information furnished by a confidential source, \* \* \* or (F) could reasonably be expected to endanger the life or physical safety of any individual \* \* \*.

---

7. With respect to No. 53 (the seven videotapes), the court accepts the EUSAO's explanation for withholding the six videotapes that do not pertain to plaintiff. The court is not satisfied based on EUSAO's present explanation that the seventh videotape contains *no* information that could be segregated and released.

5 U.S.C. § 522(b). Of these FOIA exemptions, DEA relies on (b)(2), (b)(7)(C), (b)(7)(D), and (b)(7)(F), and EUSAO relies on (b)(3), (b)(5), (b)(6), (b)(7)(C), (b)(7)(D).

In addition, both agencies rely on exemption (j)(2) of the Privacy Act, 5 U.S.C. § 552a, which provides that an agency may promulgate rules to exempt "any system of records within the agency" from certain disclosure requirements, if the agency

> performs as its principal function any activity pertaining to law enforcement of criminal laws, including police efforts to prevent, control, or reduce crime or to apprehend criminals, and the activities of prosecutors, courts, correctional, probation, pardon, or parole authorities, and which consists of (A) information compiled for the purpose of identifying individual criminal offenders and alleged offenders and consisting only of identifying data and notations of arrests, the nature and disposition of criminal charges, sentencing, confinement, release, and parole and probation status; (B) information compiled for the purpose of a criminal investigation, including reports of informants and investigators, and associated with an identifiable individual; or (C) reports identifiable to an individual compiled at any stage of the process of enforcement of the criminal laws from arrest or indictment through release from supervision.

5 U.S.C. § 552a(j)(2). A "system of records" is defined as "a group of any records under the control of any agency from which information is retrieved by the name of the individual or by some identifying number, symbol, or other identifying particular assigned to the individual." 5 U.S.C. § 552a(a)(5).

*DEA's Claimed Exemptions.*

### 1. *Privacy Act.*

DEA first explains that all of the documents responsive to plaintiff's request are maintained in a system that has been exempted from the access provisions of the Privacy Act under the provision quoted above. *See* 28 C.F.R. § 16.98 (1993). That being said, DEA appears only to rely on section 552a(j)(2) to justify withholding of the NADDIS numbers for persons other than plaintiff himself. Plaintiff does not seriously challenge DEA's assertion of this exemption, and I accept the DEA's explanation for withholding NADDIS information (*Vaughn* index pp. 9, 23, 25, 32, 35, 52, 57, 58, 68, 75).

### 2. *§ 552(b)(2) (internal rules and practices).*

DEA invokes (b)(2) to justify withholding of the G–DEP identifiers, G–DEP qualitative and quantitative criteria, and NADDIS numbers (index pages listed above, and pp. 5, 6, 8, 12, 13–17, 21, 40, 43–45, 71–72). Plaintiff does not challenge the assertion of this exemption (except to the extent the information may have been previously disclosed, *see* discussion at p. 45, *infra*), and I accept DEA's explanation.

### 3. *§ 552(b)(7)(C) (unwarranted invasion of personal privacy ).*

Section 552(b)(7)(C) exempts from disclosure law enforcement records or information that "could reasonably be expected to constitute an unwarranted invasion of personal privacy." In applying this exemption, "the court weighs 'the public interest in disclosure against the possible invasion of privacy caused by the disclosure.'" *Schiffer v. F.B.I.,* 78 F.3d 1405, 1409 (9th Cir.1996)(*quoting Hunt v. FBI,* 972 F.2d 286, 287 (9th Cir.1992)). The government bears the burden of establishing that privacy interests outweigh the public's interest in disclosure. *Schiffer,* 78 F.3d at 1409–10; *see Wiener,* 943 F.2d at 985.

In *Wiener,* the Ninth Circuit clarified that there is no presumption that privacy interests normally outweigh the public interest; instead, "[t]he privacy interests of third persons * * *, the public interest in disclosure, and a proper balancing of the two, will vary depending upon the content of the information and the nature of the attending circumstances." *Wiener,* 943 F.2d at 985. Thus, the agency must initially allege a privacy interest of the sort Congress intended section 552(b)(7)(C) to protect. *Schiffer,* 78 F.3d at 1410. The privacy interest need not rise to the level of constitutionally protected interests. *Schiffer,* 78 F.3d at 1410 (*citing*

*United States Dep't of Justice v. Reporters Committee for Freedom of the Press,* 489 U.S. 749, 762 n. 13, 109 S.Ct. 1468, 103 L.Ed.2d 774 (1989)). In *Reporters Committee,* the Supreme Court suggested that the privacy interest implicated by section 552(b)(7)(C) is a person's interest "in avoiding disclosure of personal matters" that are not "freely available" to the public. 489 U.S. at 762, 109 S.Ct. 1468. In contrast, the "sole cognizable public interest for FOIA is the interest 'to open agency action to the light of public scrutiny,' to inform the citizenry 'about what their government is up to.'" *Rosenfeld v. U.S. Dept. of Justice,* 57 F.3d 803, 811 (9th Cir.1995)(*quoting Reporters Committee,* 489 U.S. at 772, 773, 109 S.Ct. 1468).

■ In this case, DEA generally met the requirement of demonstrating a privacy interest by showing that the third persons identified in the documents, or who provided the information contained in them, are "implicated, involved or associated with plaintiff" and are of "investigative interest" to DEA, and have a privacy interest in not having it "announce[d] that these individuals were suspects in a DEA investigation" such that "derogatory influences and unnecessary attention [might] be focused on them." Wassom Declaration, pp. 9–10. In addition, DEA explains that some of the documents contain information about "innocent third parties and government employees" who were involved in plaintiff's case or involved in his criminal activities. With respect to these persons, DEA explains that

> Releasing their identities and information pertaining to these individuals could imply that otherwise innocent persons are involved in illicit activities and would place each of these persons in such a position that they may suffer undue invasions of privacy, harassment and humiliation from disclosure of their identities in a criminal law enforcement investigatory file.

Wassom Declaration, p. 10.

Plaintiff responds with two main arguments. First, he asserts that Wassom's declarations and the *Vaughn* indices are not sufficiently specific with respect to the claimed (b)(7)(C) exemptions. He also asserts that he has demonstrated a public interest in disclosure that outweighs the third parties' privacy interests.

I find that plaintiff has failed to establish that a public interest outweighs the individuals' privacy interests. . Plaintiff contends that he needs the information because "it is exceptionally newsworthy" and because the information involves questions about government integrity and alleged multi-level government corruption. *See* Complaint, Attachment A (FOIA Request of DEA by Darryl Hronek, 3/24/97) pp. 6–7. The problem with that argument is that *allegations* of government wrongdoing do not rise to the level of *evidence* of government wrongdoing. *See Hunt v. F.B.I., supra,* 289–90 (in absence of evidence of government wrongdoing, public interest in disclosure is diminished). Moreover, plaintiff's allegations suggest that disclosure of these materials would reveal only whether *his particular* investigation and trial were conducted ethically. Plaintiff presents no evidence that these issues are of interest to anyone but himself. *See Hunt,* 972 F.2d at 288–89. Finally, plaintiff has not identified how disclosure of private information about third parties (innocent or of investigative interest to DEA) would in any way advance the asserted public interest. Accordingly, the court finds that the public interest in disclosure of the information at issue is negligible.

■ I now turn to the adequacy of DEA's submissions to establish the claimed exemption. On this point, I agree with plaintiff that the categorical approach utilized by DEA is insufficient to support the claimed exemptions. In Wassom's original submissions, the only information DEA provided (except to identify the general privacy interests at stake) is an indication in the *Vaughn* index of the type of material withheld; *e.g.,* "third party names," "suspect name(s) & investigative details," "names of other law enf. personnel," etc. In the supplemental Wassom declaration, DEA gives a more specific explication of each document's content and the matter withheld, but still does not specify which of the identified privacy interests, if any, affects the third parties mentioned; rather, DEA leaves it to the court and plaintiff to determine which, if any, asserted pri-

vacy interest applies. While the court (and perhaps plaintiff) can speculate, speculation is the antithesis of the standard required for summary judgment. In short, the DEA's submissions lack the specificity necessary to permit plaintiff (or the court) to question the agency's conclusion, with respect to each individual document, that the balance tips in favor of withholding. *See Wiener,* 943 F.2d at 984.

4. *§ 552(b)(7)(D) (identity of confidential source).*

■ Exemption (b)(7)(D) permits the government to withhold documents and portions of documents "compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records * * * (D) could reasonably be expected to disclose the identity of a confidential source." 5 U.S.C. § 552(b)(7)(D); *see also Wiener,* 943 F.2d at 986.

A grant of confidentiality may be either express or implied. "An express grant of confidentiality is virtually unassailable." *Wiener,* 943 F.2d at 986. To establish an express grant, the agency need only establish that the informant was told that his or her name would be held in confidence. *Id.* To establish an implied grant, however, "requires the court to engage in a highly contextual, fact-based inquiry." *Id. (citing United Technologies Corp. v. NLRB,* 777 F.2d 90, 93–94 & n. 4 (2nd Cir.1985)). To permit this review, the agency must

> state the circumstances surrounding the receipt of information which led the [agency] to conclude the informant would not have given the information without an implicit assurance of confidentiality. Only if the requester has these facts can he intelligently argue no inference of confidentiality was justified; and only if the district court is apprised of these facts can its judgment on the merits be an informed one.

*Wiener,* 943 F.2d at 987 (footnote omitted.)

The DEA withheld numerous documents or portions of documents on the basis of (b)(7)(D) confidentiality. DEA's only representations with respect to the grant of confidentiality appear on pages 10–11 of Wassom's declaration, where she states: "In this case, some pages were withheld in their entirety since express promises of confidentiality were given to sources of information." Further down on page 11 is a subheading, which states: "NON–CODED SOURCES WHO WERE GIVEN EXPRESS CONFIDENTIALITY." The brief page-by-page discussion that follows that subheading does not discuss the grant of confidentiality, nor do the DEA's original or supplemental *Vaughn* indices.

I find the DEA's submissions to be inadequate. While DEA purports to claim an express grant with respect to all confidential sources, the materials submitted are insufficient to support that claim. Moreover, the information given is insufficient to permit plaintiff to challenge the DEA's conclusion that disclosure of documents on this ground would in fact reveal the identity of a confidential source. *See generally, Wiener,* 943 F.2d at 986–987. On this point, *see also* the discussion of prior disclosure, *infra,* at p. 1279.

5. *§ 552(b)(7)(F) (endanger life or safety of individual).*

■ Section 552(b)(7)(F) permits an agency to withhold information that could "reasonably be expected to endanger the life or physical safety of any individual." Wassom states that under this exemption, the DEA withheld the names and identities of DEA special agents, supervisory agents, and other law enforcement officers. Wassom explains that special agents and other law enforcement personnel are frequently called upon to investigate sensitive and dangerous undercover operations, routinely operating in a covert capacity, and to interact with potentially armed and violent violators. According to Wassom, DEA's release of special agents' identities has resulted in physical attacks, threats, harassment, and attempted murder of undercover and other DEA agents. Wassom Declaration, pp. 12–15.

Plaintiff argues that DEA's submissions on this point are conclusory and, therefore, insufficient. In addition, with respect to law enforcement personnel who testified at his trial, he argues that any exemption has been

waived.[8] If the DEA had withheld information other than names and identities, the court might be inclined to find the DEA's submissions insufficient. But DEA appears to have limited the redaction to names and identifying information. To the extent that this information is not presently in the public domain,[9] I conclude that the claim of exemption is proper.

*EUSAO's Claimed Exemptions.*[10]

1. *§ 552(b)(3)(specific statutory exemption).*

 EUSAO asserts exemption (b)(3) with respect to Document 1 in its *Vaughn* index, which is described as 47 pages of grand jury materials (27 pages of transcripts of testimony and 20 pages of grand jury subpoenas).

FOIA exempts from disclosure matters "specifically exempted from disclosure by statute * * * provided that such statute (A) requires that the matters be withheld from the public in such a manner as to leave no discretion on the issue * * *." 5 U.S.C. § 552(b)(3). Federal Rule of Criminal Procedure 6(e)(2), in turn, prohibits disclosure of "matters occurring before the grand jury." *Standley v. Department of Justice*, 835 F.2d 216, 218 (9th Cir.1987). Courts construing Rule 6(e), including the Ninth Circuit, have stated that it extends to " 'anything which may reveal what occurred before the grand jury,' " or " 'information which would reveal "the identities of witnesses or jurors, the substance of testimony, the strategy or direction of the investigation, the deliberations or questions of the jurors, and the like." ' " *Standley*, 835 F.2d at 218 (citations omitted). Secrecy also "extends to transcripts and file memoranda summarizing grand jury testimony." *Id.* (*citing Fund for Constitutional Gov't. v. National Archives & Records Serv.*, 656 F.2d 856, 869 (D.C.Cir.1981)).

In *U.S. v. Benjamin*, 852 F.2d 413 (9th Cir.1988), *vacated on other grounds, Benjamin v. U.S.*, 490 U.S. 1043, 109 S.Ct. 1948, 104 L.Ed.2d 418 (1989), the Ninth Circuit explained that the touchstone of Rule 6(e)'s applicability is whether the materials sought to be disclosed would " 'elucidate the inner workings of the grand jury.' " *Benjamin*, 852 F.2d at 417 (citation omitted). Although the secrecy requirements of Rule 6(e) are broad, documents or other material are not "cloaked in secrecy" merely because they are presented to a grand jury. *Id.* Moreover, once a defendant has been indicted and the grand jury investigation has been terminated, the policy concerns underlying the initial secrecy are diminished, and only concerns about compromising the integrity of the grand jury process itself remain. *See generally, United States v. Dynavac, Inc.*, 6 F.3d 1407, 1411–12 (9th Cir.1993).

Plaintiff asserts that the grand jury material at issue was disclosed to him as part of the "open file" directive in his criminal case. In addition, he argues that the EUSAO's submissions are insufficient to permit him to challenge whether the documents elucidate "the inner workings of the grand jury." With respect to plaintiff's latter argument, the court agrees that the EUSAO's submissions are flawed, but only as to the 20 pages of subpoenas. I am unable to determine if disclosure of all or part of the subpoenas will somehow compromise the integrity of the grand jury process. *See Dynavac, supra.*

As to the remaining 27 pages of transcript, I find the EUSAO's assertion of the (b)(3) exemption well-taken and adequately supported. *See Dynavac*, 6 F.3d at 1411 (Rule 6(e) extends to that which is said to the grand jury).

2. *§ 552(b)(5) (privileged documents).*

 Exemption (b)(5) exempts from disclosure "inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency." 5 U.S.C. § 552(b)(5). This exemption incorporates the attorney-client privilege, the attorney

---

8. The waiver argument is discussed below at p. 1279.

9. *See* footnote 8.

10. Like DEA, EUSAO generally discusses the Privacy Act, but it is not clear to the court that EUSAO withheld any information based solely on a Privacy Act claim of exemption. Accordingly, the court will not address this issue.

work-product privilege, and the so-called executive "deliberative process" privilege that "protects candid internal discussion of legal or policy matters." *Maricopa Audubon Soc. v. U.S. Forest Service*, 108 F.3d 1082, 1084 n. 1 (9th Cir.1997) (citations omitted); *Maricopa II*, 108 F.3d at 1092. In *Maricopa II*, the court explained that

> The exemption is "cast in terms of discovery law * * *" and entitles an agency to withhold from the public "documents which a private party could not discover in litigation with the agency. * * *" Exemption 5 thus covers the attorney-client privilege, the attorney work-product privilege, and the executive "deliberative process privilege * * *." The purpose of the deliberative process privilege "is to prevent injury to the quality of agency decisions" by ensuring that the "frank discussion of legal or policy matters" in writing, within the agency, is not inhibited by public disclosure.

*Maricopa II*, 108 F.3d at 1092.

To fall within the "deliberative process" privilege, the materials must be " 'predecisional' in nature *and* must also form part of the agency's 'deliberative process.' " *Maricopa II*, 108 F.3d at 1093 (emphasis in original; citation omitted). The Ninth Circuit has adopted the D.C. Circuit's definition of these terms:

> A "predecisional" document is one "prepared in order to assist an agency decisionmaker in arriving at his decision," and may include "recommendations, draft documents, proposals, suggestions, and other subjective documents which reflect the personal opinions of the writer rather than the policy of the agency." A predecisional document is part of the "deliberative process," if "the disclosure of [the] materials would expose an agency's decisionmaking process in such a way as to discourage candid discussion within the agency and thereby undermine the agency's ability to perform its functions."

*Maricopa II*, 108 F.3d at 1093 (*quoting Assembly of the State of Cal.*, 968 F.2d 916, 920 (9th Cir.1992), which in turn quotes *Formaldehyde Inst. v. Department of Health & Human Servs.*, 889 F.2d 1118, 1122 (D.C.Cir.

1989)). Exemption 5 is to be applied "as narrowly as consistent with efficient Government operation," in light of "the strong policy of the FOIA that the public is entitled to know what its government is doing and why." *Maricopa II*, 108 F.3d at 1093 (internal quotations and citations omitted).

Boseker's declaration explains that EUSAO asserts the (b)(5) exemption for both attorney-client privileged information and records reflecting the deliberative process of the U.S. Attorney's Office and other state and federal agencies in considering possible criminal actions against plaintiff and an accomplice. Boseker Declaration, at ¶ 16. In the *Vaughn* index, EUSAO asserts this exemption to withhold all or portions of document Nos. 9, 11, 13, 24, 25, and 31–36.

I find that EUSAO's descriptions of documents Nos. 25, 31, 33, and 34, and the explanation of the basis for withholding these documents to be sufficient for purposes of FOIA. With respect to the remaining documents (Nos. 9, 11, 13, 24, 32 and 35–36), I find the EUSAO's submissions insufficient. In many instances, the EUSAO describes the basis for withholding as "attorney work product/deliberative process," a description that leaves it to the court (and plaintiff) to speculate which is actually claimed. Moreover, I am unable to determine from this recitation whether the information was in fact "predecisional" or involved "deliberative processes" as required. Accordingly, I find the EUSAO's claims of (b)(5) exemption, with the exceptions noted above, to be inadequately supported.

3. *§ 552(b)(6) (clearly unwarranted invasion of personal privacy).*

■ Exemption (b)(6) permits an agency to withhold from disclosure "personnel and medical files and similar files, the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6). The Supreme Court has interpreted this exemption broadly to cover all information that "applies to a particular individual." *U.S. Dept. of State v. Washington Post Co.*, 456 U.S. 595, 602, 102 S.Ct. 1957, 72 L.Ed.2d 358 (1982); *see also Patterson v. I.R.S.*, 56 F.3d 832, 836 (7th Cir.1995).

In *U.S. Dept. of Defense v. F.L.R.A.*, 510 U.S. 487, 114 S.Ct. 1006, 127 L.Ed.2d 325 (1994), the Supreme Court explained the analysis of exemption 6 as follows:

First, in evaluating whether a request for information lies within the scope of a FOIA exemption, such as Exemption 6, that bars disclosure when it would amount to an invasion of privacy that is to some degree "unwarranted," "a court must balance the public interest in disclosure against the interest Congress intended the [e]xemption to protect."

Second, the only relevant "public interest in disclosure" to be weighed in this balance is the extent to which disclosure would serve the "core purpose of the FOIA," which is "contributi[ing] significantly to public understanding *of the operations or activities of the government.*" * * * We elaborated on this point at some length:

"[FOIA's] basic policy of 'full agency disclosure unless information is exempted under clearly delineated statutory language,' indeed focuses on the citizens' right to be informed about what their government is up to. * * * That purpose, however, is not fostered by disclosure of information about private citizens that is accumulated in various governmental files but that reveals little or nothing about an agency's own conduct." * * *

* * * * * *

Third, "whether an invasion of privacy is *warranted* cannot turn on the purposes for which the request for information is made." * * * Because "Congress 'clearly intended' the FOIA 'to give any member of the public as much right to disclosure as one with a special interest'" * * *, "the identity of the requesting party has no bearing on the merits of his or her FOIA request * * *."

*U.S. Dept. of Defense,* 510 U.S. at 495–496, 114 S.Ct. 1006 (citations omitted; emphasis in original).

With these principles in mind, I find EU-SAO's invocation of exemption 6 to withhold names, addresses, and personal information with respect to third parties appropriate, with the caveat that in certain instances (see section II.d, *supra*), the agency must better explain its segregability determinations. This finding rests on the court's earlier finding that the public interest plaintiff asserts is negligible compared to the privacy interests of the third parties. I cannot conclude from plaintiff's submissions that the disclosure of the redacted information advances the public's right to be informed about the workings of its government. This finding applies to documents identified in the *Vaughn* index as Nos. 15, 16, 32, 33, 37, 38–40, 42–44, and 51.

4. *Wiretap Materials (18 U.S.C. § 2510).*

EUSAO claims an exemption for all records identified in the *Vaughn* index as document No. 2 under 18 U.S.C. § 2510 *et seq.,* which concerns interception of electronic communications. Boseker states that these materials are sealed pursuant to a court order, which also is sealed. Plaintiff does not contest this representation, and I find the exemption valid.

5. *§§ 552(b)(7)(C) and (D) (invasion of privacy and confidential source).*

The analysis pertinent to FOIA exemptions (b)(7)(C) and (D) is discussed earlier in this opinion and will not be repeated here.

With respect to EUSAO's assertion of (7)(C) exemptions, as explained above, plaintiff has failed to articulate or demonstrate a valid public interest in disclosure of third party personal information. That being said, as with DEA's submissions, the court finds EUSAO's supporting materials with respect to many documents to be too conclusory to permit either the court or plaintiff to evaluate the EUSAO's determination that information is exempt under (b)(7)(C). This finding affects document Nos. 10–15, 17, 28, 30, 32, 33, 35, 36, 38, 39–41, 44, 46, 48–52, and 54.

By way of guidance, I make the following observations with respect to the above documents. The flaw in EUSAO's assertion of exemption (7)(C) in each instance derives either from the conclusory nature of the assertion (*i.e.,* no explanation of the type of material withheld or the privacy interest implicated), or the numerous overlapping ex-

emptions claimed, to the point that the court cannot determine which exemption is claimed for which material. In addition, in many instances the EUSAO has failed to adequately explain the segregability determination. Without further explanation of the reasoning behind the (7)(C) claims, plaintiff cannot evaluate or challenge the claims of exemption in any reasoned manner.

With respect to EUSAO's exemption (7)(D) claims, the primary flaw in EUSAO's submissions is EUSAO's failure to clearly state whether the grant of confidentiality was express or implied and, if implied, to explain the factual context surrounding the promise of confidentiality. *See* discussion at p. 33, *supra.* Instead, EUSAO states only that, for example, the information was "impliedly confidential" (*e.g.,* document No. 15), or "impliedly if not expressly confidential" (document No. 38), or "expressly and impliedly confidential" (document No. 41). This type of recitation gives neither the court nor plaintiff the information needed to evaluate the claims. Further, the EUSAO provides no information from which it may be determined that the information at issue remains confidential at this time. Thus, I find EUSAO's confidentiality claims to be inadequately supported.

### f. *Prior Disclosure.*

Plaintiff argues that because his criminal case was an "open file" case, and because some information related to his FOIA request, including the identities of third parties, law enforcement personnel, and confidential sources, may have been disclosed before and during his criminal trial, DEA and EUSAO have waived some or all of the claimed exemptions. Specifically, plaintiff asserts that DEA waived, through prior disclosure, all Privacy Act claims of exemption as to the 135 pages of information discussed in Wassom's supplemental declaration and *Vaughn* index, and that EUSAO has waived all FOIA exemptions.

I am not aware of any authority for such an expansive principle of waiver. *See Schiffer v. F.B.I.,* 78 F.3d 1405, 1410–11 (9th Cir.1996)(fact that information is not "wholly private" does not mean that individual has no interest in limiting disclosure or dissemination of the information); *see also Irons v. FBI,* 880 F.2d 1446, 1454 (1st Cir.1989)("Because a person may have given testimony at a trial on a specific topic does not mean that all information offered by that source upon a guarantee of confidentiality automatically becomes available to the person to whom it relates"). On the other hand, "the government cannot rely on an otherwise valid exemption to claim to justify withholding information that has been 'officially acknowledged' or is in the 'public domain.'" *Davis v. U.S. Dept. of Justice,* 968 F.2d 1276, 1279 (D.C.Cir.1992)(*quoting Afshar v. Department of State,* 702 F.2d 1125, 1130–34 (D.C.Cir.1983)). Plaintiff bears the initial burden on this point, but the ultimate burden of persuasion remains with the agencies. *See, e.g., Davis,* 968 F.2d at 1279; *Kronberg v. U.S. Dept. of Justice,* 875 F.Supp. 861, 867 (D.C.D.C.1995).

In this case, plaintiff has come forward with some specific information suggesting that certain of the information withheld is in the public domain. *But see Schiffer,* 78 F.3d at 1411 (court improperly considered requestor's personal knowledge of the information in assessing the privacy interests at stake, as identity of the requesting party has no bearing on the merits of the request). Because neither agency has explained why prior disclosures, if any, made in connection with plaintiff's criminal case have not waived claims of exemption as to those materials or witnesses, I cannot decide this issue. Accordingly, to the extent information previously disclosed to plaintiff or during his trial is being withheld under a claim of exemption, the pertinent agency must reevaluate and, if appropriate, justify continued withholding.

### III. *Remedy.*

Having undertaken the arduous task of sifting through the parties' various submissions, the court concludes that summary judgment would be premature and is inappropriate for any party. Without adequate declarations and *Vaughn* indices, the court is unable to make the findings necessary to support its ultimate decision.

The question remains as to what course to take. One option is to simply set the case for trial and take testimony on all the claims of exemption, a course I am reluctant to embark upon at this juncture. And although I could undertake *in camera* review of the documents that remain in dispute, the Ninth Circuit has made it clear that "the district court's inspection prerogative is not a substitute for the government's burden of proof." *Maricopa II,* 108 F.3d at 1093 n. 2 (*quoting Church of Scientology v. Department of the Army,* 611 F.2d 738, 743 (9th Cir.1979)). Thus, "*in camera* review is appropriate only if 'the preferred alternative to *in camera* review—government testimony and detailed affidavits—has first failed to provide a sufficient basis for a decision.'" *Maricopa II,* 108 F.3d at 1093 n. 2.

In this case, the agencies have failed to provide a sufficient basis for a decision as to some, but not all, of the withheld information. Although theoretically I could undertake *in camera* inspection at this point, I decline to exercise my discretion to do so. Instead, the agencies are ordered to resubmit detailed declarations and *Vaughn* indices addressing only the issues and documents identified in this opinion as requiring further agency explanation. Except to the extent not covered in this opinion, the court does not require or desire the parties to submit further briefing on the applicable legal principles.[11] After I review the agencies' submissions and plaintiff's response, I will decide whether to conduct an *in camera* review of the documents to resolve any remaining disputes.

## CONCLUSION

Defendants' motion for summary judgment (# 25) and plaintiff's motion for summary judgment (# 42) are DENIED. Defendants shall submit further documentation to the

court, as ordered above, within 30 days. Plaintiff shall have an additional 20 days to file a response.

---

11. One possible exception would be the applicability of the Privacy Act exemptions, to the extent they might affect the outcome. The parties' submissions on the Privacy Act to date have not been helpful.